**Judy M. SMITH, Plaintiff,**

v.

**JEFFERSON COUNTY CHAMBER OF COMMERCE, et al., Defendants.**

Civ. A. No. Y–87–1413.

United States District Court,
D. Maryland.

April 21, 1988.

Ralph Gordon, Frederick, Md., for plaintiff.

Donald K. Krohn, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff Judy M. Smith, a citizen of Maryland, sued the Chamber of Commerce of Jefferson County, West Virginia ("Chamber"), and its manager George Vickers, for injuries sustained at the Chamber's Mountain Heritage Arts & Crafts Festival held in Uvilla, West Virginia, in June 1985. While viewing an exhibit of reconditioned trunks, Smith walked into a metal tent peg. She claims that her resulting leg injury was caused by the negligent placement and marking of the tent peg, as well as the negligent placement of the trunks on display near the tent peg. Smith subsequently amended her complaint to include the artisans who exhibited the reconditioned trunks, defendants Lowell and Florence Hatfield, who are citizens of Virginia doing business as Country Trunks. At the same time, the Chamber and Vickers named the tent contractor, Paul Remsberg, trading as Remsberg's Tent Rentals, as a third-party defendant in this action.

Defendants Lowell and Florence Hatfield currently move to dismiss Smith's suit against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Smith claims that the Court has jurisdiction over the Hatfields under Maryland's "long-arm" statute, which provides in pertinent part:

> A court may exercise personal jurisdiction over a person, who directly or by an agent ... [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. [Cts. & Jud.Proc.] Code Ann. § 6–103(b)(4) (1984). The Maryland legislature enacted this statute "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution." *Camelback Ski Corp. v. Behning,* 307 Md. 270, 274, 513 A.2d 874

(1986) ("*Camelback I*"), *vacated and remanded*, —— U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *aff'd*, 312 Md. 330, ——, 539 A.2d 1107, 1113 ("*Camelback II*").[1]

Under the Constitution, a court may exercise personal jurisdiction over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The "minimum contacts" requirement serves "two related, but distinguishable functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). "The application of the 'minimum contacts' rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In other words, defendant's contact with the forum must cause him to "reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

Defendants Lowell and Florence Hatfield have operated their unincorporated business Country Trunks from their home in Lovettsville, Virginia, since 1983. They sell their refinished trunks either from their home in Virginia or at the Mountain Heritage Arts & Crafts Festival held twice each year in Uvilla, West Virginia. They are not licensed or registered to do business in Maryland, they do not sell or advertise their trunks in Maryland, and they do not maintain an office, employees, or agents in Maryland. First Affidavit of Lowell Hatfield ¶¶ 2–5.

Approximately once a month, the Hatfields attend an auction or flea market in Maryland and purchase a trunk to restore in their Virginia home for resale. On roughly four occasions, they have delivered a refinished trunk to the mother of a Rhode Island customer living in Maryland for subsequent transport by her to her child in Rhode Island. Finally, the Hatfields indicate that thirty-two to forty-one percent of their gross sales revenues may be tied to customers bearing Maryland addresses. First Hatfield Affidavit ¶¶ 6, 7.

The Hatfields pay the Jefferson County Chamber of Commerce one hundred dollars plus fifteen percent of their festival sales for a booth at the semi-annual Mountain Heritage Arts & Crafts Festival. They assume that the Chamber uses this money to defray the operating expenses of the festival. The Hatfields have never asked or expected the Chamber to use their festival fee to purchase advertising on their behalf. Second Hatfield Affidavit ¶¶ 1–5. However, the Chamber has mailed a brochure to the respective Chambers of Commerce of the six states surrounding West Virginia, including Maryland, for distribution to the media. Deposition of George Vickers at 34. Nevertheless, this brochure only lists the Hatfields and Country Trunks as occupants of a particular festival tent; it does not describe or promote the Hatfield's product whatsoever. Plaintiff's Exhibit A.

---

**1.** The United States Supreme Court vacated the Maryland Court of Appeals' judgment in *Camelback I* and remanded the case for further consideration in light of *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion), decided one week earlier. 107 S.Ct. 1341 (1987). In *Camelback II,* the Court of Appeals recognized *Asahi* as "'one of those rare cases' in which traditional notions of fair play and substantial justice defeat the reasonableness of jurisdiction even though the threshold requirement of minimal contacts may have been met." 312 Md. at 336, 539 A.2d 1107 (quoting *Asahi,* 480 U.S. at ——, 107 S.Ct. at 1035, 94 L.Ed. 2d 92 (Brennan, J., concurring in part)). Unlike the Supreme Court in *Asahi,* the Court of Appeals in *Camelback II* concluded for the second time that plaintiff failed to demonstrate that defendant had sufficient contacts with the forum to satisfy "the threshold test of jurisdiction." 312 Md. at 336, 539 A.2d 1107. Accordingly, the Court of Appeals affirmed its ruling in *Camelback I.* 312 Md. at 343, 539 A.2d 1107.

The Chamber gave the Hatfields permission to occupy space under a tent at the June 1985 festival. The Hatfields were not responsible in any way for the placement or maintenance of the tent peg which injured Smith. On the day of her injury, Smith did not purchase a trunk from the Hatfields. First Hatfield Affidavit ¶¶ 8, 9.

Smith's claim against the Hatfields resulted from their actions in West Virginia; it did not "arise out of" and is not related to the Hatfields' activities in the forum state of Maryland. Accordingly, her assertion of personal jurisdiction against the Hatfields is defined as general, as opposed to specific, and requires a showing of "continuous and systematic general business contacts" on the part of the Hatfields with Maryland. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–16, 104 S.Ct. 1868, 1871–73, 80 L.Ed.2d 404 (1984); *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 445–49, 72 S.Ct. 413, 418–20, 96 L.Ed. 485 (1952); *Camelback II*, 312 Md. at 338, 539 A.2d 1107; *Camelback I*, 307 Md. at 279–80, 513 A.2d 874.

Smith suggests that the Hatfields have maintained "continuous and systematic general business contacts" with Maryland by making a monthly purchasing trip to the state, making four deliveries to an agent of a customer in the state, amassing a large percentage of gross revenues from customers located in the state, and allowing an agent to advertise on their behalf in the state. These claims do not withstand scrutiny.

Although the Hatfields frequently purchase trunks in Maryland to refinish for resale in Virginia, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia*, 466 U.S. at 418, 104 S.Ct. at 1874; *see also Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518, 43 S.Ct. 170, 171, 67 L.Ed. 372 (1923) ("Visits [by a foreign corporation to purchase merchandise], even if occurring at regular intervals, would not

warrant the inference that the corporation was present within the jurisdiction of the State."). Similarly, the Hatfields' four deliveries to Maryland over their five years in the trunk refinishing business clearly fail to establish "continuous and systematic general business contact" with the state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 413–16, 104 S.Ct. at 1871–73.

Over a third of the Hatfields' customers drive from Maryland to the Hatfields' home in Virginia or their booth at the Mountain Heritage Arts & Crafts Festival in West Virginia to buy their refinished trunks. However, as the Maryland Court of Appeals recently recognized:

In the context of determining what is fair for purposes of jurisdiction, a significant difference exists between regularly placing goods into a stream of commerce with knowledge [that] they will be sold in another state on the one hand, and knowingly accepting the economic benefits brought by interstate customers on the other hand. Ordinarily, one who purposefully sends a product into another jurisdiction for purposes of sale may reasonably expect to be haled into court in that State if the product proves to be defective and causes injury there. In addition to having caused a direct injury within the forum State, that manufacturer or distributor has purposefully availed himself of the laws of the forum State that regulate and facilitate such conduct.

The same cannot be said of the fixed-site merchant who is simply aware that a portion of his income regularly is derived from the patronage of customers from other states. The owner of a South Carolina motel located near Interstate Route 95, for example, may know that a significant portion of his income is derived from residents of New York traveling to and from Florida, but that fact alone should not require that he be forced to litigate in New York a suit brought by a patron who claims injury as a result of a fall in the South Carolina motel. Although he may cause an indirect impact on the forum State by injuring one of its residents, he causes no direct injury in the State, and does not avail himself of the protection or assistance of its laws.

*Camelback II*, 312 Md. at 340–41, 539 A.2d 1107 (footnotes omitted). Thus, Smith cannot prove "continuous and systematic general business contact" between the Hatfields and Maryland based on the abundance of Maryland customers who journey south to the Virginias to purchase the Hatfields' trunks.

Finally, Smith argues that this Court may exercise personal jurisdiction over the Hatfields because they have allowed the Jefferson County Chamber of Commerce to advertise on their behalf in Maryland. The Hatfields assumed that the Chamber applied their exhibitor fee to the operating expenses of the festival; they never requested or demanded the Chamber to advertise on their behalf. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. ... [T]here must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240. The Hatfields could not "reasonably anticipate" that the Chamber's independent decision to advertise their presence at the festival would allow them to be "haled into [Maryland] court." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *see also Camelback II*, 312 Md. at 340–41, 539 A.2d 1107 (personal jurisdiction lacking because defendant did not devote its own energy or financial resources to advertising in the forum); *Camelback I*, 307 Md. at 283–84, 513 A.2d 874.

The Court concludes that it may not exercise personal jurisdiction over the Hatfields because they have not established "continuous and systematic general business contacts" with Maryland.[2] Consequently, the Court is not required to proceed to the second stage of the personal jurisdiction analysis, which asks whether the exercise of personal jurisdiction over the Hatfields would offend "traditional notions of fair play and substantial justice."[3] *Asahi*, 480 U.S. at —, 107 S.Ct. at 1033, 94 L.Ed.2d 92 (quoting *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158). The Court grants the Hatfields' motion to dismiss for lack of personal jurisdiction and enters judgment in their favor.

**2.** Since the Constitution's due process requirement prevents the Court from exercising personal jurisdiction over the Hatfields, the Court also lacks authority to assert this jurisdiction based on Maryland's "long-arm" statute, Md. [Cts. & Jud.Proc.] Code Ann. § 6–103(b)(4) (1984), which is designed "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution." *Camelback I*, 307 Md. at 274, 513 A.2d 874. This conclusion may also be reached by applying the language of the statute to the facts of this case. Smith is unable to demonstrate that the Hatfields "regularly do or solicit business, engage in any other persistent course of conduct in the State or derive substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. [Cts. & Jud. Proc.] Code Ann. § 6–103(b)(4) (1984).

**3.** Under this reasonableness analysis, "[a] court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi*, 480 U.S. at —, 107 S.Ct. at 1034, 94 L.Ed.2d 92 (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564).