**Jeffery K. SIMPSON, Plaintiff,**

v.

**QUALITY OIL COMPANY, INC. and Joe Horn, Defendants.**

No. IP 88–813–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 25, 1989.

Robert C. Rupp, Indianapolis, Ind., for plaintiff.

Mark R. Feather, Brown, Todd & Heyburn, Louisville, Ky., and David W. Crumbo, Brown, Todd & Heyburn, New Albany, Ind., for defendants.

TINDER, District Judge.

### ENTRY ON DEFENDANTS' MOTIONS:

*Denial of Motion to Dismiss for Failure to State a Claim, for Improper Venue, and for Lack of Personal Jurisdiction over Quality Oil Company*

*Denial of Motion to Strike and Grant of Leave to Respond to Plaintiff's Supplemental Memorandum*

*Grant of Motion to Dismiss for Lack of Personal Jurisdiction over Joe Horn*

### I. *Background Alleged by the Plaintiff*

On September 10, 1986, as part of his duties as an employee of Wilder Oil Company, Jeffery Simpson, an Indiana resident, was in Henderson, Kentucky to fill his gasoline tanker truck with fuel oil at a terminal known as Home Oil terminal. Home Oil terminal is owned by Quality Oil Company, a Kentucky corporation. In preparing to fill his truck, Simpson was standing on top of his truck's tanker. At that same time, Joe Horn, who worked for Quality Oil, was also in the process of filling his own tanker truck with fuel at the terminal. Unfortunately, Horn pulled the wrong lever, so that instead of pumping fuel into his own truck, he emptied gasoline out of a spout suspended above Simpson's head. Simpson was drenched with gasoline and aspirated it into his lungs. As a result, he claims to have suffered permanent physical injury, including a 45% impairment of his lungs.

### II. *Motions Addressed and Procedural Matters*

Seeking to recover in tort against Horn and Horn's employer, Quality Oil Company, Simpson filed this diversity suit in the Indianapolis Division of the Southern District of Indiana on July 18, 1988. Defendants have filed a Motion to Dismiss on three grounds: (1) failure to state a claim upon which relief can be granted under Rule 12(b)(6); (2) improper venue under Rule 12(b)(3); and (3) lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Having considered these motions, the supporting and opposing briefs, and affidavits, I address each of defendants' motions separately.

■ As a preliminary matter, defendants have raised objections to plaintiff's filing of two briefs in response to defendants' motions. Defendants argue that plaintiff's first responsive brief was not timely filed, thus entitling defendants to a summary ruling on their motion to dismiss. I DENY their request for a summary ruling.

Plaintiff's Response Brief was due on October 7, 1988, but was not filed until October 12, 1988. Defendants made no objection to this late filing until plaintiff filed a Supplemental Memorandum on November 15, 1988. However important these deadlines are, it makes little sense to discard potentially dispositive argument and research that has been in the possession of this court for almost a year. A just result cannot be reached in this case without a relaxation of the filing deadlines.[1] Where this court's control of the docket is not compromised by late filings, I see no reason not to be flexible. It should be noted that this does not mean that late filings will be accepted by the court as a matter of course. The Local Rules state that late filings are to be stricken, and this court waives enforcement of these deadlines only when a substantial injustice can-

---

1. I am also influenced by the fact that defendants assert that they filed their own first responsive brief in a timely fashion. Such is not the case. Local Rule 9(a) mandates that the moving party submit its responsive brief within seven (7) days (not counting weekends and specified holidays) after being served with the non-moving party's responsive brief. Here, plaintiff filed his first responsive brief on October 12, 1988. Defendants did not file their responding brief until October 27, 1988—well beyond the seven day limit, even when three days are added on for service by mail pursuant to Fed.R.Civ.P. 6(e).

not be avoided without some rare exception to the rule. This is one of those circumstances.

■ Defendants have also moved to strike plaintiff's second brief on grounds that it is not permitted under either the Rules of Civil Procedure or the Local Rules, and on grounds that it was not timely filed. Defendants' motion to strike is DENIED, but their alternative request for leave to file a responsive brief is GRANTED. Both plaintiff's and defendants' additional briefs are helpful to the court in reaching the correct result.

### III. *Failure to State a Claim*

■ Because of defendants' failure to brief this motion, as required by Local Rule 9,[2] I DENY defendant's 12(b)(6) motion. Although defendants have submitted three briefs, no argument or law supporting the 12(b)(6) motion can be found in the briefs. Plaintiff's first responsive brief even draws this omission to the court's and the defendants' attention, but no responsive argument is made by defendants. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, at 5.

The purpose of a motion brief is to focus the court's attention on the pertinent legal arguments and the relevant facts that support one's motion. Defendants' failure to brief this motion leaves me with little guidance as to the merits of the motion, and thus I am left to speculate about an unlimited variety of legal arguments that defendants might have made, had they bothered to support their motion. Although I do not embrace with enthusiasm any violation of the Local Rules, I am especially hesitant to excuse a violation that leaves me to create arguments for one of the parties. This might be required when a *pro se* litigant is involved in a suit, but it is not acceptable when a party is represented by experienced counsel. I will not consider motions made under Rule 12(b) that are not accompanied by adequate briefs addressing the particular motion.

### IV. *Improper Venue*

■ Defendants' second motion to dismiss is grounded on improper venue. Venue in this case is controlled by 28 U.S.C. § 1391(a). This section permits a civil action founded only on diversity to be brought in any of three possible districts: the district where all plaintiffs reside, the district where all defendants reside, or the district in which the claim arose. Here, the plaintiff has chosen to sue in the district in which the plaintiff resides—the Southern District of Indiana. Defendants do not argue that venue is improper in this district (indeed, they concede that venue would have been proper in the Evansville division of this district). Rather, they argue that the Indianapolis division is the improper division within the proper district. Surprisingly, their conclusion to this argument is not that transfer to the Evansville division would correct this error. Instead, they argue that only a dismissal of the case or a transfer to the Owensboro division of the Western District of Kentucky can rescue venue. Defendants' Brief in Support of Defendants' Motion to Dismiss, at 8–9.

In making this argument, defendants point to 28 U.S.C. § 1393, which requires a civil action brought in a single defendant's district to be brought in the division of that district in which the defendant resides. As defendants note, this section's own language seems to preclude its application when suit is brought in the *plaintiff's* district. Notwithstanding this limitation, defendants argue that no Indiana court has yet ruled on this legal question, thus leaving the point open to debate. I disagree.

According to Wright and Miller: "The statute [§ 1393] says nothing about plaintiffs. Thus if plaintiff lays venue in the

---

**2.** Local Rule 9(a) states, in part:
A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure ... shall be accompanied by a separate supporting brief. To avoid any doubt, subsection (b) of Local Rule 9 emphasizes that briefs are required with a 12(b)(6) motion:

By way of emphasis, this rule specifically applies to a defense on the ground that a complaint ... fails to state a claim upon which relief can be granted.

district in which he resides, it appears to be correct—although it makes little sense—that he can sue in any division of the district." 15 C. Wright & A. Miller, Federal Practice and Procedure § 3809, at 88 (2d reprint 1986).

In addition, § 1393 was repealed effective February 17, 1989. Act of Nov. 19, 1988, Pub.L. 100–702 § 1101, 102 Stat. 4642, 4664. Of course, this case was filed prior to § 1393's repeal. Nonetheless, its repeal does suggest that expansion is improper, especially where the suggested expansion has been constrained by the statute's own language. I decline to apply § 1393 beyond the clear limits of its scope. Venue in this case is exclusively controlled by § 1391(a), and is proper in the Indianapolis division of the Southern District of Indiana.

### V. Lack of Personal Jurisdiction

Turning finally to the defendants' jurisdictional attack, defendants argue that this court lacks personal jurisdiction over each of them. When a defendant raises lack of personal jurisdiction in a motion to dismiss, the burden is on the plaintiff to demonstrate a basis for the forum court's exercise of personal jurisdiction. This burden is met by a prima facie showing that jurisdiction is permitted by the state's long-arm statute. Of course, all facts and reasonable inferences to be drawn from those facts are to be considered in a light most favorable to the non-moving party. *International Steel Co. v. Charter Builders, Inc.*, 585 F.Supp. 816, 819 (S.D.Ind.1984).

A federal court, sitting in diversity, can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits. Fed.R.Civ.P. 4(e). Indiana's "long-arm" statute thus controls this court's exercise of personal jurisdiction over both non-resident individuals and foreign corporations. Ind.R. of Trial P. 4.4(A). In addition, the due process clause of the fourteenth amendment restricts the scope of personal jurisdiction that a federal district court, or any court in this country, may exercise over a non-consenting defendant. Indiana Trial Rule 4.4(A) has been deemed to extend personal jurisdiction to the full

limits established by the fourteenth amendment. *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind.1978). "Thus, the usual two-step analysis of first checking if a state statute allows jurisdiction over defendant and then ascertaining whether the state's assertion of jurisdiction accords with due process collapses into a single search for the outer limits of what due process permits." *Id.*

This search for the outer limits of what due process permits may be singular, but it is not simple. Time and again, the Supreme Court has tried to set forth a workable test for personal jurisdiction. Beginning with *International Shoe Co. v. Washington*, the Court has held that the non-resident defendant must have some minimum contact with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court quantified the necessary "minimum contacts" as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court examined the relationship among the defendant, the forum, and the litigation to determine if it would be "reasonable" to require the defendant to defend a suit in the forum state.

Our own Seventh Circuit has counseled that there exists no touchstone for personal jurisdiction. "[The] sufficiency of minimum contacts cannot be determined by any set formula or rule of thumb, but 'must rest on a consideration of what is fair and reasonable in the circumstances of each particular case.'" *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984) (quoting *Telco Leasing, Inc.*

*v. Marshall County Hosp.*, 586 F.2d 49, 50 (7th Cir.1978)).

■ The exercise of jurisdiction over non-resident defendants must be based on one of two types of personal jurisdiction recognized by the Supreme Court—specific or general jurisdiction. Specific jurisdiction exists when the defendant's contacts with the forum are related to the controversy and those contacts reach a "minimum" threshold. *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158. Where the controversy does not arise out of the defendant's contacts with the forum, the court may exercise general jurisdiction if the defendant has "continuous and systematic" contacts with the forum, even though those contacts have no relation to the underlying controversy. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Before beginning any analysis of the sufficiency of these defendants' contacts, it is appropriate first to describe these contacts. Joe Horn's contacts with the State of Indiana are quite limited. Horn is an employee of Quality Oil. He is a citizen of the state of Kentucky, not of Indiana. He resides in Owensboro, Kentucky. Plaintiff's Complaint, ¶ 2. In his capacity as an employee of Quality Oil, Horn has made occasional deliveries of fuel into the state of Indiana. On the day of the accident, Horn was filling his tanker truck for delivery into Indiana. Affidavit of Jeffery Simpson at 1–2, ¶¶ 2–4.[3] Plaintiff does not allege that Horn held an Indiana driver's license or paid any Indiana income tax.

Quality Oil is a Kentucky corporation with its principal place of business in Owensboro, Kentucky. Quality Oil has the following contacts with the State of Indiana. Pursuant to a contract with Shell Oil Company, Quality Oil purchases fuel from Shell's oil terminal in Evansville, Indiana, and then trucks the fuel to its Home Oil terminal in Henderson, Kentucky, which borders Indiana on the Ohio River. Quality Oil sells an unspecified amount of its gasoline to retailers located in the state of Indiana, and trucks the fuel to those retailers. In October 1987, a year after the accident, Quality Oil purchased a 165′ by 125′ parcel of land in Newburg, Indiana—a town just east of Evansville on the Ohio River, and across the river from Owensboro, Kentucky. It leases this parcel of land to a Shell franchisee, and makes occasional sales of fuel to the franchisee/tenant. In addition, Quality Oil has an Indiana tax identification number, but does not pay Indiana tax on the fuel that it purchases in Evansville, Indiana. Instead, it pays Kentucky tax on this fuel. Affidavit of William Booth, president of Quality Oil Company.

Whether these contacts are sufficient to justify the exercise of jurisdiction depends on the type of jurisdiction being asserted. Specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be "related" in some way to the defendant's contact with the forum. General jurisdiction, on the other hand, re-

---

3. Defendants object to the submission of Jeffery Simpson's affidavit on grounds that it contains facts outside of the personal knowledge of the affiant. Simpson's affidavit states that he has observed Horn fill up with fuel at Home Terminal and then drive across the Ohio river into Indiana, both before and after the accident. Simpson also states that he has "discussed this with Home Oil terminal employees" and that they have also noticed Horn travel north, and that they believe he is driving to the Shell Oil terminal in Evansville, Indiana. I have disregarded those statements in the affidavit that refer to the belief of Home Oil terminal employees. *G.D. Searle Co. v. Charles Pfizer Co.*, 231 F.2d 316, 318 (7th Cir.1956) (facts outside of the affiant's personal knowledge are not to be considered by the court).

However, Simpson himself states that he personally observed Horn drive on "numerous occasions," both before and after the accident, into Indiana to deliver fuel after loading at the Home Oil terminal. This statement is enough to create a reasonable inference that Horn on the day of the accident was also making a delivery into the State of Indiana. When considering a motion to dismiss, the court must view all facts and reasonable inferences to be drawn therefrom in a light most favorable to the plaintiff. *International Steel Co. v. Charter Builders, Inc.*, 585 F.Supp. at 819. Even though Quality Oil Company's president, William Booth, states by affidavit that Horn was filling up for a Kentucky delivery, Affidavit of William Booth, at 2, ¶ 6, I must accept Simpson's reasonable inference.

quires a greater quantum of contacts ("continuous and systematic"), but permits the court to include in its analysis contacts that have absolutely no relationship to the underlying dispute.

Thus, whether I can exercise personal jurisdiction over these defendants will depend first on whether these contacts are closely enough "related" to the controversy to permit the exercise of specific jurisdiction, and second, if not closely enough "related", on whether the contacts are significant enough in number and importance to justify general jurisdiction.

Although the exercise of specific jurisdiction clearly depends on the existence of some nexus between the defendant's contacts and the controversy, it is not clear how strong this nexus must be. Case law and legal commentary are split over this question.

Some have argued that contacts must be substantively related to (i.e. "arise out of") the controversy in order to support specific jurisdiction. *See, e.g., Standard Life & Accident Ins. Co. v. Western Fin., Inc.,* 436 F.Supp. 843, 846 (W.D.Okla.1977) ("The acts alleged to give rise to the cause of action must be the same acts which provide the basis for the Oklahoma court's exercise of jurisdiction over the non-resident defendant."); and Brilmayer, *A General Look at General Jurisdiction,* 66 Tex.L.Rev. 721, 738 (1988).

Others suggest that an adequate nexus exists not only if the controversy "arises out of" but also if it is even "related to" the defendant's contacts in the loosest sense of that term. *See, e.g., Cubbage v. Merchent,* 744 F.2d 665, 668 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976) (trucker who struck California resident in Nevada while transporting

goods to California was subject to specific jurisdiction in California because contacts were "substantially related" to the controversy); *Southwire Co. v. Trans–World Metals & Co.,* 735 F.2d 440, 442 (11th Cir. 1984); and von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1136–45 (1966).

Still others argue for a sliding scale of contacts that blurs the distinction between specific and general jurisdiction. Justice Brennan has argued that contacts related to the controversy should be counted in specific jurisdiction analysis, even if they are not substantively related to the controversy:

> Moreover, the Court refuses to consider any distinction between contacts that are "related to" the underlying cause of action and contacts that "give rise" to the underlying cause of action. In my view, however, there is a substantial difference between these two standards for asserting specific jurisdiction.... [T]he ... claim ... is significantly related to the undisputed contacts between [the defendant] and the forum.

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 425, 104 S.Ct. 1868, 1878, 80 L.Ed.2d 404 (Brennan, J. dissenting from the majority's refusal to consider specific jurisdiction).

Both federal and state cases decided in Indiana suggest that the defendant's contacts with the forum must be substantively related to the cause of action in order to confer specific jurisdiction over the defendant. After analyzing these cases and considering the arguments of the three schools of thought, I am convinced that substantive relevance is the proper test for "relatedness" that conditions the exercise of specific jurisdiction.[4] When

---

**4.** I believe that the question of "relatedness" must ultimately turn upon a consideration of constitutional due process, and that the Constitution limits "relatedness" to substantive relevance. Although "relatedness" can be initially defined by state statute (just as "minimum contacts" are now defined in state long-arm statutes), the Constitution is the final check on

these state statutes. Were there no constitutional check on the definition of "relatedness," states would be free to promulgate loose definitions that connected controversies to even the most tangentially related forum contacts. These loose definitions would permit states to reach out beyond their borders to assert specific jurisdiction over non-resident defendants who

this test is applied to this case, it becomes apparent that there is no nexus between this controversy and these defendants' contacts. Therefore, specific jurisdiction cannot be exercised over either of these two defendants.

Traditionally, a defendant can be subject to specific jurisdiction within a forum when it has purposefully sent *into* the forum a product that causes a tort *within* the forum.

> [I]f the sale of a product of a ... distributor ... is not simply an isolated occurrence, but arises from the efforts of the ... distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has *there* been the source of injury to its owner or to others.

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567 (emphasis added).

However, a defendant's contacts with the forum will usually have no substantive relevance to a cause of action based on tortious negligence when the tort is committed *outside* of the forum. *Ellenstein v. S. & S. Game Preserve, Inc.*, 581 F.Supp. 81 (S.D.Ind.1983) (Kentucky company is outside the specific jurisdictional reach of Indiana courts for tort claims arising from the negligent operation of a motor vehicle in Kentucky). *Accord Subacz v. Town Tower Motel Corp.*, 567 F.Supp. 1308, 1314 (N.D.Ind.1983) (Ohio motel company's contacts with Michigan forum are not substantively related to a tort committed on Michigan plaintiff while staying in a motel in Indiana); and *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306 (S.D.Ind.1978) (Colorado and Tennessee companies are not subject to specific jurisdiction of Indiana courts for tort committed in Colorado motel on Indiana plaintiff).

█ Furthermore, substantive relevance does not exist simply because a tort is committed outside of the forum by means of a commodity that evidence suggests may have come from and may be bound for the forum state. *See, e.g., Smith v. Jefferson County Chamber of Commerce*, 683 F.Supp. 536 (D.Md.1988) (federal district court in Maryland lacked specific jurisdiction over Virginia defendants who caused a Maryland woman to fall over a metal tent peg at a West Virginia county fair by means of their negligently-placed reconditioned trunks that may have come from and gone back to Maryland). Even when the tortiously-damaged entity itself comes from and is bound for the forum state, substantive relevance is apparently still lacking. *Tietloff v. Lift–A–Loft Corp.*, 441 N.E.2d 986 (Ind.Ct.App.1982) (where forklift that came from and was bound for Arkansas was tortiously damaged in Indiana by Indiana company, Arkansas court lacked power to exercise specific jurisdiction over Indiana company with respect to tort claim) (dictum).

█ Moreover, the forum contacts of the plaintiff or those closely related to the defendant cannot be imputed to the defendant for purposes of establishing personal jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 574, 62 L.Ed.2d 516 (1980) ("The requirements of *International Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction"); and *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (forum contacts of employer/newspaper cannot be imputed to employee/writer). The fact that the commodity causing the plaintiff's injuries had some independent contact with the forum

had no reasonable expectation of being haled into court in that forum.

Unfortunately, neither the Indiana courts nor the Indiana General Assembly has defined "relatedness." I am also unaware of any case law that directly uses the federal Constitution to limit the scope of "relatedness." The Supreme Court in *Helicopteros* specifically reserved this question for another case. 466 U.S. at 415–16 n.

10, 104 S.Ct. at 1873 n. 10. The case law discussed after this footnote merely adopts substantive relevance as the test for "relatedness" without ascribing it to state statutory requirements or to the federal constitution. I do not quarrel with the results reached in these cases, but would urge that the analysis should have been approached from the perspective of constitutional due process.

state is a mere coincidence that does not affect the defendant's contacts with the forum.

Such is the case here. The fact that the commodity causing plaintiff's injury was bound for the forum state, and the plaintiff's status as an Indiana citizen are not legally relevant to the underlying tort claim. If these contacts with the forum are irrelevant to the substantive claim, then the controversy cannot be described as "arising from" these contacts.[5] As a result, these coincidental facts cannot be used to support the exercise of specific jurisdiction over the defendants.

■ If the controversy did not arise from the contacts of the defendants with the forum state, then specific jurisdiction cannot exist even if minimum contacts with the forum do exist. Thus, if this court is to exercise personal jurisdiction at all, it can be based only on general jurisdiction. This requires the defendants to have had "continuous and systematic" contacts with the forum. These contacts do not, however, have to have any relationship to the underlying tort claim. The quantum of contacts need only be sufficient to make it "reasonable to require the corporation to defend the particular suit" in the forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S.Ct. at 564.

Given defendant Horn's limited contacts with the forum, I see no basis for exercising general jurisdiction over him. The only contact that plaintiff alleges Horn has with the state of Indiana is his occasional presence in the state as a result of his delivery of fuel into Indiana. However, he did not solicit these sales and does not share in any direct economic benefit resulting from these sales. *Cf. World–Wide Volkswagen Corp.*, 444 U.S. at 298–99, 100 S.Ct. at 567–68 (economic benefit to New York Volkswagen distributor resulting from nationwide service centers is too tenuous to serve as a contact with the Oklahoma fo-

rum); *Contrast Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (upholding exercise of *specific* jurisdiction over employee of defendant newspaper for libelous article written by employee based, in part, on employee's frequent trips into the forum). In short, Horn has not himself had "continuous and systematic" contacts with the forum.

Since this court lacks the power to exercise either specific or general jurisdiction over Horn, Simpson's claims against Horn cannot be heard in this district. I GRANT defendants' motion to dismiss plaintiff's claim against defendant Horn. The case against this defendant will be dismissed without prejudice.

■ On the other hand, I find that Quality Oil has had "continuous and systematic" contacts with this forum. Quality Oil's business is intimately tied up with Indiana businesses, Indiana law, and an Indiana infrastructure.

Quality Oil systematically purchases its fuel supply from Shell through Shell's terminal in Evansville, Indiana. These purchases constitute the primary commodity on which Quality Oil's business depends; the redistribution of this fuel is the central business purpose of the defendant.

Admittedly, "mere purchases, even if occurring at regular intervals, are not enough to warrant ... *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 418, 104 S.Ct. at 1874. However, in that case the Court was presented with an international Colombian company that was being sued in a Texas court over a helicopter crash that occurred in Peru, South America. Quality Oil's contacts with the state of Indiana are more continuous and much more parochial than were the Colombian company's contacts with Texas in *Helicopteros*. *Cubbage v. Merchent*, 744 F.2d at 672 (distinguishing *Helicopteros* on geographical grounds).

---

**5.** Of course, this conclusion means that a federal court's exercise of specific personal jurisdiction in diversity cases will depend on the substantive state law. But a federal court's exercise of personal jurisdiction over non-resident defen-

dants is already controlled by the forum state's long-arm statute. *See also* Brilmayer, *A General Look at General Jurisdiction*, 66 Tex.L.Rev. at 738.

In addition to this contact, Quality Oil redistributes some of its fuel in Indiana. Its employees transport the fuel from Indiana to Kentucky and also transport it from the Home Oil terminal back into Indiana. Affidavit of Jeffery Simpson, ¶¶ 3–4 at 1–2.

Quality Oil also now owns a parcel of land in the state which it leases out as a gas station/convenience store; the company also supplies this tenant gas station with fuel from its oil terminal in Kentucky. *Cf. Rollins v. Proctor & Schwartz*, 478 F.Supp. 1137, 1140 (D.S.C.1979) (forum state ownership of two filing cabinets contributed to a finding of personal jurisdiction), *rev'd on other grounds*, 634 F.2d 738 (4th Cir.1980); *Schroeder v. Raich*, 89 Wis.2d 588, 278 N.W.2d 871, 875 (1979) (ownership of three parcels of land contributes to a finding of personal jurisdiction).

■ Although Quality Oil did not buy this land until over a year after the accident, I am not precluded from including this contact in my calculus. Admittedly, the timing of a defendant's purchase of real estate in the forum state will affect the weight given to this contact, as will such factors as the amount of land purchased, the purpose for which the land is used, and the duration of ownership. However, these factors do not affect whether land ownership is to be considered a contact at all, but do affect the weight to be accorded land ownership. Clearly, ownership of land in the forum state is a relevant contact. When a defendant has engaged in some post-tort activity within the forum state that contributes to (indeed expands upon) its primary business activity, this activity may be considered when evaluating the reasonableness of asserting personal jurisdiction.[6] *Cf. Rollins v. Proctor & Schwartz*, 478 F.Supp. at 1139–40 & n. 2 (discussing defendant's pre-tort activities in the forum state, and the effect of post-tort activities on personal jurisdiction).

Quality Oil also has an Indiana tax identification number. Although Quality Oil is not currently using it, merely having such a number serves to eliminate one of the many regulatory hurdles that confront companies seeking to do business in Indiana, thereby putting Quality Oil slightly ahead of those foreign companies that do not yet have a number.

Certainly, the mere issuance of an Indiana tax identification number is not enough to confer Indiana with personal jurisdiction; but I think that this contact, the other contacts between Quality Oil and Indiana, and the reasonable inferences that must be construed in favor of plaintiff all suggest that this company has engaged in a continuous course of business that integrally depends on Indiana law and Indiana businesses for its survival. Quality Oil's contacts with the state are not far-reaching, but they are also far from tenuous. For example, it may be that Quality Oil has more contacts with Southern Indiana than it has with some parts of Kentucky. Taken as a whole, the defendant's contacts with this forum persuade me that personal jurisdiction may be exercised without a due process violation.

The additional factors that can sometimes serve to dissolve a forum court's power of personal jurisdiction are not significant in this case. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S.Ct. at 564. The burden placed on the defendant by having to litigate in this forum is not great. Geographically, Owensboro is closer to Indianapolis, Indiana than it is to many other parts of Kentucky. *Contrast Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1364 (7th Cir.1985) (Greek defendant forced to litigate suit in Wisconsin). The plaintiff lives in this state and many of the witnesses, especially the doctors who treated Simpson's injuries are located in this state.

---

**6.** To some degree, post-tort activity has a one-way ratchet effect. Non-resident defendants cannot defeat personal jurisdiction by severing all contact with the forum state after the accident. However, they can tip the balance of factors toward personal jurisdiction by expanding their contacts with the forum after the accident. Although this rule might tend to discourage the influx of capital to the state, I do not believe that asserting personal jurisdiction in this case will serve as a substantial deterrence on future investment in the state.

 Defendant is undoubtedly less concerned with the travel time between Owensboro, Kentucky and Indianapolis than with the change in law that comes with the border crossing. However, so long as considerations of venue and personal jurisdiction are satisfied, this court cannot question a plaintiff's motivation for filing suit in one federal district court instead of another. *Cf. Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (New York plaintiff permitted to sue Ohio magazine company in New Hampshire, which was the only state in which the statute of limitations had not run, seeking to collect nationwide damages for libel).

### VI. *Conclusion*

For all the above reasons, the defendants' motion to dismiss for lack of personal jurisdiction is GRANTED with respect to defendant Joe Horn and is DENIED with respect to Quality Oil Company. Defendants' motions to dismiss for failure to state a claim, and for improper venue are likewise DENIED.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OVER JOE HORN

The court, having filed its Entry of this date on the defendants' motion to dismiss in the above-captioned matter, NOW THEREFORE, IN ACCORDANCE THEREWITH,

IT IS ORDERED AND ADJUDGED that the plaintiff, Jeffery Simpson take nothing by way of his complaint against defendant Joe Horn, and the cause is hereby dismissed without prejudice against defendant Joe Horn.