ROBB, Judge,
concurring in part, dissenting in part.
I concur with the majority opinion regarding specific jurisdiction as to NME Hospitals, Inc., but dissent with regards to jurisdiction pertaining to Tenet/NME.
The majority’s comparison of the facts of this case to Charlesioorth v. Marco Mfg. Co. and L.H. Carbide Corp. v. Piece Maker does not withstand scrutiny. In Charlesworth, the plaintiff, a former employee of the defendant, sued his former employer for age discrimination. Charlesworth was a sales manager who resided in Indiana, while Marco was a California firm. The district court held that Marco’s contacts with Indiana “do not rise to the level of being ‘continuous and systematic.’ ” Charlesworth, 878 F.Supp. 1196, 1201 (N.D.Ind.1995). Apparently, Charlesworth was Marco’s only Indiana sales agent and accounted for only 1.28%—0.36% of Marco’s annual sales. Marco had, at most, three Indiana distributors for its products and communicated with Charlesworth exclusively from California. Likewise, in Piece Maker, where an Indiana corporation brought a patent infringement action against a Michigan corporation, the facts supporting personal jurisdiction showed that a single sales engineer for Piece Maker solicited business from a small number of customers in Indiana. “The only presence Piece Maker has in Indiana is one salesman who periodically drives through the state to ascertain whether the four (4) to five (5) customers who reside in Indiana ... require any products from Piece Maker.” Piece Maker, 852 F.Supp. 1425, 1434 (N.D.Ind.1994). The district court found this insufficient to establish general jurisdiction.
In contrast, the record indicates that Tenet/NME personnel visited Indiana several dozen times during a period slightly over three years. The visits were made primarily by executive level employees from many different departments: audit, security, legal, marketing, training, real estate, computer services, government relations, and others. These trips were continuous, systematic, and frequent. They involved purchase and sale of real estate, litigation, recruiting and interviewing, operations, and visits by corporate presidents. These contacts were not with a single sales agent, as in Charlesworth or Piece Maker.
In addition, Tenei/NME engaged in extensive correspondence and negotiation with entities in Indiana regarding Medicare and Medicaid audits and reimbursements. Much of this correspondence refers to various Indiana hospitals as wholly-owned subsidiaries of NME, not NME Hospitals, NME Psychiatric Properties, or NME Psychiatric Hospitals. See R. 861, 884, 918, 968. Among the issues discussed regarding these audits was NME Home Office costs, television and yellow pages advertising. See R. 908, 936, 941, 973.
The majority downplays the significance of a lawsuit filed in Indiana against NME, which was answered by their Indianapolis *1170 counsel in April, 1990, as well as a settlement agreement between NME and the State of Indiana, regarding alleged Medicaid fraud, executed in October, 1994. Also, Tenet/NME requested hearings with the Indiana Family & Social Services Administration’s Office of Medicaid Policy and Planning regarding reimbursements. See R. 861, 968. These acts show that Tene VNME’s business “integrally depend[ed] on Indiana law....” Simpson v. Quality Oil Co., Inc., 723 F.Supp. 382, 391 (S.D.Ind.1989). TeneVNME’s “contacts with the state are not far-reaching, but they are also far from tenuous.” Id. I conclude that TeneVNME’s contacts with Indiana were continuous and systematic. I would hold that the trial court erred in granting TeneVNME’s motion to dismiss for lack of personal jurisdiction.