**John MULLEN, Robert E. J. Curran and Kathleen Mullen, Appellants–Third–Party Defendants,**

v.

**Charles R. COGDELL and Livingston, Dildine, Haynie & Yoder, Appellees–Third–Party Plaintiffs.**

No. 57A05–9308–CV–289.

Court of Appeals of Indiana, Fifth District.

Nov. 30, 1994.

Rehearing Denied Jan. 25, 1995.

David R. Steiner, John F. Lyons, John M. Clifton, Barrett & McNagny, Fort Wayne, for appellants.

Hunt, Suedhoff, Borror & Eilbacher, Leonard E. Eilbacher, Fort Wayne, for appellees.

RUCKER, Judge.

This is an interlocutory appeal from three orders entered by the trial court during the pendency of a third-party complaint filed by Plaintiffs–Appellees Charles Cogdell and the law firm of Livingston, Dildine, Haynie & Yoder (collectively "Cogdell"). The complaint was filed against Defendants–Appellants John Mullen, Kathleen Mullen, and Robert Curran (collectively "Appellants") based on a claim arising out of a real estate

transaction. Appellants moved to dismiss the complaint for lack of personal jurisdiction. The trial court denied the motion. Thereafter, Appellants filed a motion for summary judgment. That motion was denied as well. Cogdell's motion to amend his complaint was granted. This appeal ensued. We address the following issues:

1) Whether the trial court erred in denying Appellants' motion to dismiss for lack of personal jurisdiction?

2) Whether the trial court abused its discretion in granting Cogdell leave to amend his third-party complaint to include a claim of actual fraud and a request for punitive damages?

3) Whether the trial court erred in denying Appellants' motion for summary judgment?

We affirm in part, reverse in part and remand.

### FACTS

In 1985, Pamela Morris decided to move from her residence in Washington, D.C. and to relocate in the state of Indiana. In accordance with that plan, Morris began making arrangements for the sale of her Washington, D.C. town house. Morris initially attempted to sell the property without the aid of a real estate agent but later signed a listing agreement with Mary White, Inc., a real estate agency located in Washington, D.C. The listing agreement covered the period of September 8, 1985, through November 8, 1985, and provided for a six percent brokerage fee if the property were sold during the listing period. The agreement also provided for payment of the brokerage fee if the property were sold within 120 days after termination of the listing period "to anyone to whom the property has been shown prior to final termination of the listing contract." *Record* at 260–61.

On September 14, 1985, Kathleen Mullen, a resident of Washington, D.C., along with her brother, John Mullen, a Pennsylvania resident, visited the property and made an oral offer to purchase. Mary White, Inc.

informed the Mullens that the offer was too low and that the seller would not accept it. Approximately one week later, John Mullen telephoned Morris at her home in Washington, D.C. and made the same offer. However, this time Mullen identified himself as Phil Harvey and claimed to have seen the property prior to the time it was listed with the agent. Mullen informed Morris that he did not wish to deal with an agent and wanted to purchase the property after the listing agreement expired in order to avoid payment of a real estate commission. Mullen also telephoned Morris's father, Alfred Maloley, at his winter home in Sea Island, Georgia, regarding the proposed sale. Maloley, a resident of Fort Wayne, Indiana, remained at his home in Georgia throughout the events relevant to this litigation.

After Morris and Maloley expressed interest in selling the town house, John Mullen instructed his Pennsylvania attorney, Robert Curran, to prepare a purchase and sale agreement naming the buyer of the property as "Philip J. Harvey or his nominee." *Record* at 78 (Deposition of John Mullen, p. 16). Curran prepared the agreement and signed the name Philip Harvey.[1] Curran mailed the proposed agreement along with a transmittal letter to Alfred Maloley in Georgia. The same day Curran prepared a letter to a title company in Washington, D.C. regarding the proposed sale. Copies of each of these documents were sent to Morris in Washington, D.C. and to Alfred Maloley's accountant in Fort Wayne, Indiana.

Immediately prior to expiration of the listing agreement, the parties resumed discussions regarding the sale. Maloley referred John Mullen to his attorney, Charles Cogdell, in Fort Wayne, Indiana. Mullen then provided Curran with Cogdell's telephone number and address and requested that Curran contact Cogdell concerning the transaction. During one of several telephone conversations between Curran and Cogdell, Curran indicated that "Philip Harvey" would be out of the country on the date set for closing and that Harvey therefore wished to take title in

---

1. Philip Harvey is actually the brother-in-law of John Mullen's wife. Although he was aware that his name was being used in connection with the sale, Harvey himself had no interest in the sale and never made contact with any of the parties involved.

the name of Kathleen Mullen. Cogdell thereafter prepared a revised purchase agreement naming Kathleen Mullen as purchaser.

On November 8, 1985, John Mullen, again identifying himself as Philip Harvey, telephoned Pamela Morris in Indianapolis requesting keys to the Washington, D.C. residence. The same day, Mullen telephoned Maloley's attorney, Charles Cogdell, concerning details of the impending closing. On November 9, 1985, Morris signed the deed and other closing documents and on November 14, 1985, the closing proceeded with Kathleen Mullen signing the purchase agreement, tendering the purchase price, and accepting title to the property.

Shortly thereafter Morris's real estate agent, Mary White, Inc., discovered that the property had been sold to a person who had seen the property during the listing period, which represented a violation of the listing agreement. The agency sued Morris, Maloley, John Mullen and Kathleen Mullen seeking recovery of its real estate commission. That litigation was eventually settled out of court.

Thereafter, on November 4, 1987, Pamela Morris and her father Alfred Maloley filed a malpractice action against Cogdell alleging negligence in connection with the sale. Prior to trial on the complaint for malpractice, Cogdell filed a third-party complaint against John Mullen, Kathleen Mullen, and Robert Curran. Count I of Cogdell's complaint sought indemnity for the amount of any judgment rendered against Cogdell in the malpractice action. Count II alleged a claim of constructive fraud and sought damages for emotional distress and injury to professional reputation. Cogdell's complaint also sought recovery of attorney's fees incurred in defense of the malpractice action. On May 23, 1989, a trial was held on the malpractice action resulting in a jury verdict in favor of Morris and Maloley.

On March 29, 1989, Appellants filed a motion to dismiss Cogdell's complaint for lack of personal jurisdiction. The trial court denied the motion. On February 1, 1993, Appellants filed a motion for summary judgment. The trial court took the motion under advisement

and ultimately denied it as well. In the interim the trial court entered an order granting Cogdell's motion to amend his complaint to include an allegation of actual fraud and a request for punitive damages. On October 14, 1993, we accepted this interlocutory appeal on each of the trial court's orders.

## DISCUSSION

### I.

Appellants first contend that the trial court erred in denying their motion to dismiss. According to Appellants they are not residents of the State of Indiana and the actions giving rise to Cogdell's complaint lack the minimum contacts necessary to confer personal jurisdiction on any court of this State.

■ To determine whether a nonresident defendant's contacts with the forum state are sufficient to confer personal jurisdiction, a two-part analysis is required. First, we must determine if the state's long arm statute authorizes the exercise of jurisdiction over the defendant; and second, we must determine whether asserting jurisdiction over the defendant would offend the due process clause of the Fourteenth Amendment. *Brokemond v. Marshall Field & Co.* (1993), Ind.App., 612 N.E.2d 143, 145 citing *Szakacs v. Anheuser–Busch Companies, Inc.,* (N.D.Ind.1986), 644 F.Supp. 1121, 1122; *Tietloff v. Lift–A–Loft Corp.* (1982), Ind.App., 441 N.E.2d 986, 988.

Indiana Trial Rule 4.4(A), this state's long arm statute, provides that a nonresident may be subject to the jurisdiction of Indiana's courts if certain conditions are met. Specifically the statute provides in part:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state....

We have held that the foregoing statute is intended to extend personal jurisdiction to the limits permitted under the due process clause of the Fourteenth Amendment. *See Dura–Line Corp. v. Sloan* (1986), Ind.App., 487 N.E.2d 469, 470; *Radio Picture Show v. Exclusive Int'l Pictures, Inc.* (1985), Ind.App., 482 N.E.2d 1159, 1164, *trans. denied.* Thus, the inquiry here is whether asserting jurisdiction over John Mullen, Robert Curran and Kathleen Mullen would offend the due process clause of the Fourteenth Amendment. In essence, we must engage in a "single search for the outer limits of what due process permits." *Griese–Traylor Corp. v. Lemmons* (1981), Ind.App., 424 N.E.2d 173, 180 citing *Oddi v. Mariner–Denver, Inc.* (S.D.Ind.1978), 461 F.Supp. 306, 308.

Due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *Harold Howard Farms v. Hoffman* (1992), Ind.App., 585 N.E.2d 18. Minimum contacts are required to assure that a defendant has purposefully availed himself of the jurisdiction of the forum state. *Baseball Card World, Inc. v. Pannette* (1991), Ind.App., 583 N.E.2d 753, *trans. denied.* The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely on the basis of random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him. *First American Bank of Va. v. Reilly* (1990), Ind.App., 563 N.E.2d 142. The focus is on the defendant's activities within the forum state, not on those of the plaintiff. *Freemond v. Somma* (1993), Ind.App., 611 N.E.2d 684, *trans. denied.*

Whether minimum contacts exist in a particular factual setting must be determined on a case-by-case basis; there are no hard and fast rules regarding the existence of a minimum contact. *Fetner v. Maury Boyd & Assoc., Inc.* (1990), Ind.App., 563 N.E.2d 1334, *trans. denied.* When a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts. *Brokeman v. Marshall Field & Co.* (1993), Ind.App., 612 N.E.2d 143, 145.

The contacts relevant to jurisdiction in the present case include the following. Pursuant to John Mullen's instructions, Curran mailed copies of documents related to the proposed sale to Alfred Maloley's accountant in Indiana. Mullen later provided Curran with Cogdell's address and telephone number in Indiana and requested that Curran establish contact with Cogdell "for the purpose of putting together a sales contract." (*Record* at 78, Deposition of John Mullen, p. 15). A series of telephone conversations ensued between Curran and Cogdell concerning the terms of the proposed contract. Some telephone calls were initiated by Curran. The parties eventually agreed on the terms and a contract was formed. In addition to Curran's activities in connection with the sale, John Mullen also placed two telephone calls, one to Pamela Morris in Indianapolis in order to obtain a key to the property, and the other to Cogdell in Fort Wayne concerning details on the impending closing.

Appellants contend the foregoing contacts are too fortuitous and attenuated to support the exercise of jurisdiction. Specifically, they point out that neither Alfred Maloley nor Pamela Morris was residing in Indiana at the time John Mullen initially contacted them concerning the property and that it was Maloley's idea, not John Mullen's, to involve an Indiana attorney in the transaction.

Despite Appellants' claim that involvement by Indiana residents was merely fortuitous, the record reveals that at the time John Mullen was negotiating the sale, he was aware that Alfred Maloley's permanent residence was located in Indiana and that Maloley's accountant and lawyer were also residents of Indiana. Mullen also knew of Pamela Morris's plans to move to Indiana. Thus, the mailing of documents and the placing of telephone calls to persons in Indiana were actions initiated by John Mullen and were contacts necessary to complete the transaction.

■ The law is clear that an ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit. *Tietloff v. Lift–A–Loft Corp.* (1983), Ind.App., 441 N.E.2d 986, 990 citing *Thompson v. Ecological Science Corp.* (8th Cir.1970), 421 F.2d 467, 470. Here, the contacts did give rise to such claim. The documents which Curran mailed to the accountant and which were forwarded to Cogdell contained the misrepresentation that Phil Harvey was the proposed purchaser of the D.C. property. During telephone conversations between Curran and Cogdell in which the terms of the sale were discussed, Curran claimed to be acting on behalf of Phil Harvey. When Mullen placed telephone calls to Pamela Morris in Indianapolis and to Cogdell in Fort Wayne he identified himself as Phil Harvey. It was as a result of these misrepresentations that Cogdell claims he suffered injury. Appellants' contacts with Indiana are therefore sufficient to confer jurisdiction on the courts of this state.[2]

Appellants counter that the foregoing contacts are nevertheless insufficient to confer jurisdiction over Kathleen Mullen because the alleged acts were performed solely by John Mullen and Robert Curran.

■ It is true that each defendant's contacts with Indiana must be assessed separately. *Rush v. Savchuk* (1980), 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516. However, it is also true that where facts in evidence establish the existence of an agency, the jurisdictional acts of the agent are those of his principal. *See Cumis Ins. Soc'y, Inc. v. South–Coast Bank* (N.D.Ind.1984), 587 F.Supp. 339; T.R. 4.4(A) (a person submits to the jurisdiction of Indiana courts as to any action arising from acts committed by him "or his agent").

■ An agency is the relationship which results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, and consent by the other so to act. *Lafayette Bank & Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759, 761, citing Restatement of the Law of Agency, Vol. 1, § 1, p. 7. An agency may arise by implication and may be shown by circumstantial evidence. *Upchurch v. Henderson* (1987), Ind.App., 505 N.E.2d 455; *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099.

■ The record here shows that John Mullen agreed to help his sister locate a home in the Washington, D.C. area. He accompanied Kathleen on visits to several homes including the Morris town house. While at the Morris residence, John made an oral offer to purchase the property which Kathleen later confirmed in writing. Although Kathleen was not involved in the negotiations that followed rejection of the offer and was presumably unaware of the misrepresentations made by John Mullen and Robert Curran, implicit in her actions was a consent to allow John to take the steps necessary in order to purchase the property. In addition, the fact that Kathleen ultimately accepted title to the property as a result of the negotiations provides the inference that John Mullen and Robert Curran were acting on her behalf and subject to her control. The foregoing facts are sufficient to establish the existence of an agency, and therefore the contacts with Indiana made by John Mullen and Robert Curran are those of Kathleen for purposes of establishing jurisdiction. The trial court did not err in denying appellants' motion to dismiss for lack of jurisdiction.

## II.

Appellants next contend the trial court abused its discretion in granting Cogdell's motion to amend the complaint in order to

---

**2.** Our decision today is consistent with our determination in *Woodmar Coin Center, Inc. v. Owen* (1983), Ind.App., 447 N.E.2d 618. In that case we found that by placing two telephone calls to an Indiana company, conducting substantial negotiations over the telephone, and forming a contract with an Indiana resident, the defendant "purposely availed himself of the benefits and responsibilities of doing business in this State." *Id.* at 621. *Cf. Harold Howard Farms v. Hoffman* (1992), Ind.App., 585 N.E.2d 18, 20–21; *Baseball Card World, Inc. v. Pannette* (1991), Ind.App., 583 N.E.2d 753, 755 n. 2, *trans. denied* (criticizing as dicta *Woodmar*'s discussion of personal jurisdiction).

add an allegation of fraud and a claim for punitive damages.

■ Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury. *Allied Mills Inc., v. P.I.G. Inc.* (1983), Ind.App., 454 N.E.2d 1240. The trial court has broad discretion in granting or denying amendments to the pleadings and we will reverse only upon a showing of abuse of discretion. *Id.* In *Palacios v. Kline* (1991), Ind.App., 566 N.E.2d 573, we determined that the substance of the abuse of discretion analysis concerning proposed amendments requires an evaluation of a number of factors, including: undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiency by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment. Seizing on the *Palacios* language, Appellants argue the trial court abused its discretion here because the amendments unduly prejudiced them and the punitive damages claim would be futile.

■ We first observe that the list of factors outlined in *Palacios* is not exhaustive nor are the individual factors evaluated in isolation from one another. There are a number of factors to be weighed and evaluated in determining whether a trial court has abused its discretion in granting or denying a motion to amend the pleadings. Here, Appellants isolate two factors and urge reversal based on an alleged abuse of discretion. We cannot agree with their reading of *Palacios* in that regard.

In any event Appellants have failed to demonstrate undue prejudice. To support their contention Appellants argue the amendment was made after the separate malpractice trial. According to Appellants, had they known that Cogdell would seek punitive damages they "would have strenuously opposed separate trials and joined with the Plaintiff in having the trial date put off until the court could rule on the issue of punitive damages as a matter of law." *Brief of Appellants* at 69. Appellants' argument must fail. There is no guarantee that even had the Appellants objected to a separate trial that the objection

would have been sustained. The record reveals the trial court ordered separate trials because the first trial, the malpractice action, did not involve the third party complaint. The inclusion of a claim for fraud and a request for punitive damages would not have altered the posture of the case. In essence, Appellants' position now is no different than it would have been if the claim and request had been included in Cogdell's original complaint.

■ As for the futility of the amendment, Appellants argue there is no evidence inconsistent with the hypothesis that their conduct was the result of mistake, error of judgment, overzealousness, mere negligence, or some other non-iniquitous human failing, as required for recovery of punitive damages. *See Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362. Appellants' argument is misdirected. "Futility" implies that the amendment is useless. However, that is a determination which the trier of fact will make after a full presentation of the evidence. To speculate at this stage of the proceeding that no such evidence exists is obviously inappropriate. The trial court did not abuse its discretion in granting Cogdell's motion to amend the complaint in order to add an allegation of fraud and a claim for punitive damages.

### III.

■ On various grounds Appellants contend the trial court erred in denying their motion for summary judgment. When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.* We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts

and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.*

## INDEMNITY

■ Appellants first argue the trial court erred in denying their motion for summary judgment on Cogdell's claim for indemnity. According to Appellants, indemnity may be granted only in favor of one whose liability to another is solely derivative or constructive and may not be allowed where, as here, liability results from one's own negligence.[3]

Cogdell concedes that the judgment against him was rendered solely on the basis of his own malpractice and that under the law as it now exists he would not be entitled to indemnity. However, he urges this court to reexamine the rule barring indemnity between joint tort-feasors and to find, as have other jurisdictions, that an exception to the rule exists where the conduct of one tort-feasor is substantially more egregious than that of another. According to Cogdell, the present case merits such an exception because his own conduct was merely negligent while the conduct of Mullen and Curran was willful, wanton and reckless.

■ Indiana adheres to the general rule that in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification only if he is without fault. *E.Z. Gas, Inc. v. Hydrocarbon Transportation, Inc.* (1984), Ind.App., 471 N.E.2d 316, 319; *McClish v. Niagara Machine & Tool Works* (S.D.Ind. 1967), 266 F.Supp. 987, 989. The right to indemnity may be implied at common law only in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused

such liability to be imposed. *Indianapolis Power & Light Co. v. Snodgrass* (1991), Ind., 578 N.E.2d 669, 671.

Some jurisdictions have recognized exceptions to this general rule in cases where there is a disparity in the conduct of the parties. Thus, it has been held that one who is only secondarily liable is entitled to indemnity from one who bears primary responsibility for the plaintiff's injury. *Yohay v. City of Alexandria Employees Credit Union* (4th Cir.1987), 827 F.2d 967, 973–74. In some cases, a passively negligent tort-feasor may obtain indemnity against one who is actively negligent. *Playskool, Inc. v. Elsa Benson, Inc.* (1986), 147 Ill.App.3d 292, 100 Ill.Dec. 837, 841, 497 N.E.2d 1199, 1203, *appeal denied.* In at least one jurisdiction, a negligent tort-feasor has a right to indemnity from an intentional tort-feasor. *Kutner v. Moore* (1990), 159 Wis.2d 120, 464 N.W.2d 18, 20.

■ However, Indiana has refused to adopt any of these variations, instead reaffirming the rule that there may be no indemnity where the party claiming indemnity is guilty of actual negligence whether malfeasance, misfeasance or nonfeasance. *Coca–Cola Bottling Co. v. Vendo Co.* (1983), Ind. App., 455 N.E.2d 370, 373; *Indiana State Highway Comm'n v. Thomas* (1976), 169 Ind. App. 13, 346 N.E.2d 252, 259 quoting *McClish*, 266 F.Supp. at 991. This is so because Indiana recognizes no degrees of fault. *Coca–Cola*, 455 N.E.2d at 373. We decline Cogdell's invitation for this court to reexamine the foregoing authorities and instead conclude that Cogdell's negligence bars him from recovery under the theory of indemnity. The trial court erred in failing to grant summary judgment for Mullen on this issue.[4]

---

**3.** In their motion for summary judgment and in their brief on appeal Appellants argue that they are entitled to summary judgment on the issue of contribution. Although the two concepts are analogous, contribution has been distinguished from indemnity in that contribution involves the partial reimbursement of one who has discharged a common liability while indemnity requires reimbursement of the entire amount of the liability. *Coca–Cola Bottling Co. v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370, 373 n. 4; W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 51 (5th ed. 1984). It is a well-

settled rule of law that there can be no contribution among joint tort-feasors. *Elcona Homes Corp. v. McMillan Bloedell, Ltd.* (1985), Ind.App., 475 N.E.2d 713, *trans. denied;* Ind.Code § 34–4–33–7. Here, Cogdell's complaint does not request contribution and rather seeks only indemnity.

**4.** Because Cogdell is not entitled to indemnity for the amount of the judgment obtained by Morris and Maloley, he likewise may not recover attorney's fees incurred in defense of that action.

## CONSTRUCTIVE FRAUD

Appellants next contend they are entitled to summary judgment on Cogdell's claim of constructive fraud because Appellants owed no duty to Cogdell.

 Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595, 598. The elements of constructive fraud are 1) a duty existing by virtue of the relationship between the parties, 2) representations or omissions made in violation of that duty, 3) reliance thereon by the complaining party, 4) injury to the complaining party as a proximate result thereof, and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Nestor v. Kapetanovic* (1991), Ind.App., 573 N.E.2d 457. In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them. *Comfax Corp. v. North American Van Lines* (1992), Ind.App., 587 N.E.2d 118.

 We agree with Appellants that no fiduciary relationship exists in this case. The parties here were involved in arms length negotiations resulting in the formation of a contract. The law is clear that a fiduciary relationship may not be predicated on such an arrangement. *Comfax,* 587 N.E.2d at 125–26. However, the existence of a fiduciary relationship is not the only basis for a claim of constructive fraud. Rather, our courts have consistently held that a constructive fraud may also arise where the relationship between the parties is that of buyer and seller. *Kirkpatrick v. Reeves* (1889), 121 Ind. 280, 22 N.E. 139; *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313 (where a seller makes unqualified statements in order to induce another to make a purchase, the buyer relies on those statements, and the seller has professed knowledge of the truth of the statements, a constructive fraud occurs); *Coffey v. Wininger* (1973), 156 Ind.App. 233, 296 N.E.2d 154; *Smart & Perry Ford Sales,*

*Inc. v. Weaver* (1971), 149 Ind.App. 693, 274 N.E.2d 718.[5] The law recognizes that in a buyer-seller relationship one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. The relationship is therefore one which invokes a duty of good faith and fair dealing.

 The record reveals that the parties maintained the relationship of buyer and seller. As the attorney for Morris and Maloley, Cogdell served as their agent and representative. He therefore stood in their shoes as seller. Appellant Kathleen Mullen and her representatives, Appellants John Mullen and Robert Curran, were the buyers in the transaction. Throughout the course of the transaction, Appellants misrepresented the identity of the buyer of the property in order to avoid payment of a real estate commission, and Cogdell relied upon the misrepresentations to his detriment. Because the parties maintained the relationship of buyer and seller, each owed a duty to the other to engage in a course of conduct that represented good faith and fair dealing. Appellants' argument that they owed no duty to Cogdell therefore must fail. The trial court did not err in denying Appellants' motion for summary judgment on this issue.

## EMOTIONAL DISTRESS DAMAGES

Appellants next claim the trial court improperly denied their motion for summary judgment on the issue of damages for emotional distress. According to Appellants, Cogdell is not entitled to emotional distress damages because he suffered no physical injury as a result of Appellants' alleged misrepresentations.

 Compensatory damages for mental distress or emotional trauma are generally recoverable only when the distress is accompanied by and results from a physical injury caused by an impact to the person seeking recovery. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Our courts recognize an exception to the general rule

---

**5.** Although each of the foregoing cases involves misrepresentations by the seller, we believe the rationale for imposing a duty upon the seller is equally applicable where the duty of the buyer is at issue.

and award compensatory damages for mental anguish unaccompanied by physical injury in tort actions involving intentional conduct. *Id.* The intentional conduct exception applies where the tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. *Arlington State Bank v. Colvin* (1989), Ind. App., 545 N.E.2d 572, 576, *trans. denied.* Proof of an intentional fraud will support an award of emotional distress damages. *Knauf Fiber Glass, GmbH v. Stein* (1993), Ind.App., 615 N.E.2d 115, 127, *aff'd in part, vacated in part on other grounds,* 622 N.E.2d 163, *reh'g denied; Groves v. First Nat'l Bank of Valparaiso* (1988), Ind.App., 518 N.E.2d 819, 829, *trans. denied; Captain & Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, *trans. denied; First Nat'l Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345, 1350. Whether in a particular case the fraud is such that it is likely to provoke an emotional disturbance is a question of fact for the jury. *Baker v. American States Ins. Co.* (1982), Ind.App., 428 N.E.2d 1342, 1349.

■■■■ Here, Cogdell's complaint alleges that Appellants knowingly misrepresented the identity of the buyer of the property and that such conduct constitutes actual fraud. Thus, Cogdell has alleged a claim sufficient to support an award of emotional distress damages. The trial court properly denied summary judgment for Mullen on this issue.[6]

Mullen additionally argues that the trial court erred in denying his motion for summary judgment on Cogdell's "tort defamation claim." However, as Cogdell points out, his complaint does not allege a claim for tort defamation and rather merely requests damages for injury to his professional reputation.

## CONCLUSION

We affirm the trial court's order denying Appellants' motion to dismiss for lack of jurisdiction.

We affirm the trial court's order granting leave to amend the third-party complaint.

Concerning the trial court's order denying Appellants' motion for summary judgment, we reverse as to Cogdell's claim for indemnity and we remand this cause with instructions to enter summary judgment in favor of Appellants on the issue of indemnity. In all other respects the trial court's order denying Appellant's motion for summary judgment is affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.

---

6. We note that Appellants do not challenge the existence of the elements constituting actual fraud. Rather, they allege merely that the trial court abused its discretion in allowing Cogdell to amend his complaint to include a claim of actual fraud. We have already determined that the trial court did not err in allowing the amendment.