OPINION
GARRARD, Judge
Facts and Procedural History

1. The Parties

The plaintiffs in this ease are Anthem Insurance Companies, Inc.' and Anthem Life Insurance Company (collectively known as “Anthem”). Anthem Insurance Companies, Inc. was formerly known as Associated Insurance Companies, Inc. and is incorporated under Indiana law with its principal place of business in Indianapolis, Indiana. Anthem Life Insurance Company is incorporated under Texas law with its principal place of business in Texas. Anthem issues health insurance policies and other health-related contracts.
National Medical Enterprises, Inc. (“NME”) was a corporation organized under Nevada law with its principal place of business in California. In 1995, NME changed its name to Tenet Healthcare Corporation (“Tenet”) and now operates under that name. For our purposes, we will refer to this corporation as “Tenet/NME.” Tenet/NME owns, operates, and manages acute psychiatric hospitals across the United States through various subsidiaries. One of these subsidiaries was National Medical Enterprises Psychiatric Properties, Inc. (“NME Psychiatric Properties”), which operated Jefferson Hospital, Inc., P.I.A. Indianapolis, Inc., and P.I.A. Michigan City, Inc. In turn, these entities owned, respectively, Jefferson Hospital, Arbor Hospital, and Kingwood Hospital, all located in Indiana. In 1994, each of these hospitals was sold to Charter Medical Corporation.
National Medical Enterprises Hospitals, Inc. (“NME Hospitals”) is a Delaware corporation with its principal place of business in California and is a wholly-owned subsidiary of Tenet/NME. NME Hospitals operated two psychiatric hospitals in Dallas, Texas; Doctors Hospital and Brookhaven Psychiatric Pavilion.

2. Anthem’s Claim

On December 19, 1995, Anthem filed a complaint against Tenet/NME and forty-three other defendants, including NME Hospitals, NME Psychiatric Properties, and NME Psychiatric Hospitals, Inc. Anthem alleges that TeneVNME-owned health care providers knowingly admitted patients when their admission was not medically necessary or appropriate, and continued to hospitalize patients who no longer required medical at *1163 tention. The providers then misrepresented or omitted material facts to Anthem in order to convince Anthem that the admissions were medically necessary, thus engaging in fraud. In reliance upon the misrepresentations, Anthem paid the insurance claims submitted for payment.

3. Motion to Dismiss

Tenet/NME, its three subsidiaries, and forty of the “non-resident” health care facilities filed a motion to dismiss under Indiana Trial Rules 12(B)(2) and (6).[1] The trial court granted the motion to dismiss as it pertained to Tenet/NME and NME Hospitals.[2] In so ruling, the court stated that Anthem “failed to demonstrate that contacts of these defendants with the forum state are of such a nature as would constitute ‘continuous and systematic’ contacts granting the court general jurisdiction over them.” Record at 1761. The court denied the remainder of the motion leaving, as defendants in the case, NME Psychiatric Hospitals, Jefferson Hospital, Inc. (Jefferson Hospital), P.I.A. Indianapolis, Inc. (Arbor Hospital of Greater Indianapolis), P.I.A. Michigan City, Inc. (Kingwood Hospital), and the thirty-seven “non-resident” health care provider facilities. Other facts will be discussed as necessary.
Issues
I. Whether the trial court erred in dismissing Anthem’s claim because of lack of personal jurisdiction over Tenet/NME.
II. Whether the trial court erred in dismissing Anthem’s claim because of lack of personal jurisdiction over NME Hospitals.
Discussion and Decision
Anthem contends that the trial court erred in dismissing its case against Tenet/NME and NME Hospitals for lack of personal jurisdiction.[3] To determine whether a nonresident defendant’s contacts with the forum state are sufficient to confer personal jurisdiction, we engage in a two-part analysis. First, we determine whether our state’s “long-arm” statute authorizes the exercise of jurisdiction over the defendant. Second, we determine whether exerting jurisdiction over the defendant would offend the Due Process Clause of the Fourteenth Amendment. Mullen v. Cogdell, 643 N.E.2d 390, 396 (Ind.Ct.App.1994), tram, denied.
A discussion of due process is premature, however, without initially considering the burden of proof in jurisdictional matters. In Indiana, jurisdiction is presumed and need not be asserted. Ind. Trial Rule 8(A). A party challenging jurisdiction must initially establish its lack by a preponderance of the evidence unless lack of personal jurisdiction is apparent on the face of the complaint. Alberts v. Mack Trucks, Inc., 540 N.E.2d 1268, 1270 (Ind.Ct.App.1989), trans. denied. Once a jurisdictional challenge is made by the defendant, the plaintiff must then come forward with evidence to establish jurisdiction. Baseball Card World, Inc. v. Pannette, 583 N.E.2d 753, 755 (Ind.Ct.App.1991), tram, denied.
Here, Anthem alleges jurisdiction over Tenet/NME and NME Hospitals on the face of the complaint. The complaint states that NME (referring to Tenet/NME and NME Psychiatric Hospitals) “owned, operated and managed acute psychiatric rehabilitation hospitals throughout the United States. In particular, NME operated and controlled the remaining defendant corporations-” Record at 21. Three of the defendant hospitals were located in Indiana. A trial court’s jurisdiction over a nonresident is governed by Indiana Trial Rule 4.4(A) which reads in relevant part as follows:
(A) Any person or organization that is a nonresident of this state, ... submits to *1164 the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
(1) doing any business in this state; ... Therefore, Anthem alleged a basis for the exercise of jurisdiction over Tenet/NME and NME Hospitals by an Indiana court—that Tenet/NME was doing business in Indiana. At this point, it was the defendants’ burden to come forward with evidence to establish that Indiana courts did not have jurisdiction, which it did in the form of an affidavit by Lawrence Hixon, a vice-president of Tenet/NME. In response to the defendants’ motion to dismiss, Anthem also produced evidence to establish jurisdiction. Thus, we must examine the facts presented along with the requirements of due process to determine whether the trial court erred in granting the motion to dismiss. In making this determination, we will employ an abuse of discretion standard as the decision whether to grant a motion to dismiss based on lack of personal jurisdiction lies within the sound discretion of the trial court. Mid-States Aircraft Engines v. Mize Co., 467 N.E.2d 1242, 1247 (Ind.Ct.App.1984).
Due process requires that the defendant have certain minimum contacts with the forum state. The contacts must be of such quality as not to offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 315-17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Whether contacts exist in a particular case is determined on a case-by-case basis. Mullen, 643 N.E.2d at 397. The factors to be considered in making this determination are: 1) the nature and quality of the contacts with the forum state; 2) the quantity of contacts with the state; 3) the relationship between those contacts and the cause of action; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. Rosowsky v. University of Colorado, 653 N.E.2d 146, 148-49 (Ind.Ct.App.1995). The defendant will not be subjected to jurisdiction solely on the basis of “random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him.” Burger King v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).
There are two types of personal jurisdiction that can be established by a defendant’s minimum contacts: specific and general. Specific jurisdiction is present if the defendant has contacts from which the cause of action arises. These contacts must constitute at least a minimum level of contact with the forum allowing a reasonable exercise of jurisdiction. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is present if the defendant’s overall activity in the state is sufficiently “continuous and systematic” that jurisdiction over the defendant is reasonable and just, even if the cause of action does not arise from and is not related to the defendant’s contacts with the forum. Id. at 414-15, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404.

I. General Jurisdiction Over Tenet/NME

Considering Tenet/NME first, we examine whether the contacts it had with Indiana satisfy the assertion of general jurisdiction.[4] Anthem argues that Indiana courts may exercise general jurisdiction over Tenet/NME because Tenet/NME had continuous and systematic contacts with Indiana from the early 1990’s through 1996 in connection with Tenet/NME’s ownership and operation of hospitals located in Indiana. Tenet/NME asserts that its contacts with Indiana were “random” and “minimal in light of the company’s overall nationwide operations” and that Tenet/NME’s contacts were with its subsidiary, NME Psychiatric Properties, and not . the resident health care providers.
It is undisputed that the entities engaging in the alleged insurance fraud were the health care providers or hospitals. The three named Indiana hospitals; Jefferson Hospital, Arbor Hospital, and Kingwood Hospital were operated by NME Psychiatric Properties, which is a holding company and wholly-owned subsidiary of Tenet/NME. *1165 The record reflects that Tenet/NME employees did have contacts with Indiana and many of these contacts were directly with the resident health care providers. It is also undisputed that these contacts were unrelated to the controversy; however, this is not relevant to a general jurisdiction inquiry. The general jurisdiction inquiry “permits the court to include in its analysis contacts that have absolutely no relationship to the underlying dispute.” Charlesworth v. Marco Mfg. Co., 878 F.Supp. 1196, 1200 (N.D.Ind.1995).
In support of its argument for finding general jurisdiction, Anthem relies on Simpson v. Quality Oil Co., Inc., 723 F.Supp. 382 (S.D.Ind.1989). In Simpson, the plaintiff Simpson was injured while emptying gasoline into a tanker truck. Simpson sought to recover in tort in the federal district court for the Southern District of Indiana against an employee of another oil company, Quality Oil Company, claiming a Quality employee caused the injury. Id. at 384. Quality was a Kentucky corporation with its principal place of business in Kentucky. Thus, Quality claimed that the Indiana court lacked personal jurisdiction over it. However, Quality had a contract with Shell Oil Company and purchased its fuel from Shell’s oil terminals in Evansville, Indiana. Quality also sold a certain amount of gasoline to retailers located in Indiana. Additionally, Quality owned land in Indiana. Id. at 387. The district court held that it had general jurisdiction over Quality based on Quality’s “continuous and systematic” contacts with Indiana. Id. at 390. In so holding, the court stated that Quality Oil “ha[d] engaged in a continuous course of business that integrally depends on Indiana law and Indiana businesses for its survival.” Id. at 391.
In Charlesworth, the plaintiff Charles-worth was an employee of the defendant corporation, Marco Manufacturing Company, a California corporation. Charlesworth, 878 F.Supp. at 1199. Charlesworth was hired by Marco as a sales manager for Marco’s Midwest Region. Throughout his employment, Charlesworth resided in Indiana and sold Marco fireplaces to businesses in Indiana and surrounding states. While located there, Charlesworth routinely received correspondence from Marco’s corporate office in California through telephone calls and facsimile. Id. Charlesworth was also visited in Indiana by a Marco representative on at least one occasion. Id. at 1201. Chariesworth’s employment with Marco was later terminated and Charlesworth sued Marco in federal court in Indiana alleging that the termination violated the Age Discrimination in Employment Act. Id. at 1199. After reviewing Marco’s contacts with Indiana, the court concluded that its contacts did not rise to the level of “continuous and systematic.” Id. at 1201. Although Marco had deliberately placed a sales representative in Indiana and received a small percentage of its annual sales from business conducted in Indiana, the court still determined that the contacts were insufficient to confer jurisdiction. Id.[5]
Lastly, in L.H. Carbide Corp. v. Piece Maker Co., 852 F.Supp. 1425 (N.D.Ind.1994), the plaintiff Carbide, an Indiana corporation, filed suit in the federal district court for the Northern District of Indiana against the defendant Piece Maker, a Michigan corporation, alleging patent infringement. Piece Maker, 852 F.Supp. at 1428. The facts warranting the exercise of general jurisdiction over Piece Maker were that Piece Maker employed a sales engineer who solicited business in Indiana and visited Indiana customers every two to three months on service calls. The sales engineer also telephoned customers regarding service issues. The district court concluded that Piece Maker did not have “pervasive contacts” with Indiana so as to find the existence of personal jurisdiction. Id. at 1435.
Tenet/NME argues that its contacts with Indiana were not “continuous and systematic.” In support of its argument, Tenet/NME relies on the following facts: It has no facilities or employees in Indiana. It is not regis *1166 tered to do business in Indiana. None of its directors or officers reside in Indiana. It does not own real estate in Indiana and has no bank account in Indiana. The record supports these assertions. In contrast, Anthem argues that general jurisdiction does exist based on the following facts: Tenet/NME sent employees to Indiana to conduct business with the resident providers. Tenet/NME held itself out as doing business in Indiana through a webpage listing and a business directory listing. Tenet/NME hired Indiana businesses to provide goods and services for them, including storage companies, lobbying firms, law firms,. and other businesses.[6] Lastly, TeneVNME was previously involved in a lawsuit with the State of Indiana.[7]
After considering the facts presented in the instant case and the foregoing cases, we conclude that the trial court did not abuse its discretion in granting TeneVNME’s motion to dismiss for lack of personal jurisdiction. In so concluding, we note that “the standard for establishing general jurisdiction is fairly high.” Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1245 (7th Cir.1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). While TeneVNME made contact with Indiana, the contacts were not of the quality or the quantity necessary to require a court to exercise personal jurisdiction over a non-resident defendant. Further, we find that this case is more similar to Piece Maker and Charlesworth than Simpson. TeneVNME’s contacts with Indiana are not far-reaching, and we cannot conclude that TeneVNME’s business is “intimately tied up with Indiana businesses, Indiana law, and an Indiana infrastructure” so as to reverse the trial court’s decision not to confer jurisdiction. Simpson, 723 F.Supp. at 390.

II. Parent/Subsidiary Relationship

We now address Anthem’s contention that general jurisdiction should be exercised over Tenet/NME as the parent corporation of NME Psychiatric Properties and the three Indiana providers. The use of a subsidiary corporation by a parent corporation as the instrumentality for doing business in a state does not necessarily subject the parent corporation to the jurisdiction of the subsidiary’s state courts. General Finance Corp. v. Skinner, 426 N.E.2d 77, 84 (Ind.Ct.App.1981). However, jurisdiction has been found through the parenVsubsidiary relationship in certain instances. See Wesleyan Pension Fund, Inc. v. First Albany Corp., 964 F.Supp. 1255 (S.D.Ind.1997). We recognize that a corporation should not be able to insulate itself from jurisdiction in a state where it conducts business simply by separately incorporating other operations within that state. That situation is different from one in which the subsidiaries conduct their own business and jurisdiction is sought over the parent simply because it is the parent. IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 541 (7th Cir.1998).
Anthem relies on Wesleyan Pension in asserting that general jurisdiction should be exercised over Tenet/NME via the parent/subsidiary relationship. In Wesleyan Pension, the federal district court for the Southern District of Indiana attributed the contacts of eight subsidiaries to a parent corporation in deciding to exercise personal jurisdiction over the parent corporation. The court reasoned:
Where a parent utilizes its subsidiary in such a way that an agency relationship can be perceived, a court may assert personal jurisdiction over the parent. A court may also find jurisdiction over the parent where the parent has greater control over the subsidiary “than normally associated with common ownership and directorship” or where the subsidiary is merely an empty shell.
Wesleyan Pension, 964 F.Supp. at 1261 (quoting Donatelli v. National Hockey *1167 League, 893 F.2d 459 (1st Cir.1990)). The court determined that the eight subsidiaries were merely “empty shells” based on facts closely linking the parent corporation to the subsidiaries. For example, all nine corporations shared the same corporate address, telephone number, and principal place of business. Id. at 1262. Moreover, the same three individuals acted as the controlling shareholders and sole directors of both the parent and subsidiary corporations. Id. Based on these facts, the court found that it did not offend due process principals to treat the nine defendant corporations as a single entity for jurisdictional purposes. Id.
In support of its assertion that jurisdiction should be conferred over Tenet/NME, Anthem points to several facts. First, the three Indiana health care providers allegedly engaging in fraud are operated by a Tenet/NME subsidiary, NME Psychiatric Properties. These resident providers are Jefferson Hospital, Inc., P.I.A. Indianapolis, Inc. (operating as Arbor Hospital), and P.I.A. Michigan City, Inc. (operating as Kingwood Hospital). The three providers have corporate offices in Santa Monica, California, at the same address as the corporate offices for Tenet/NME and NME Psychiatric Properties. However, we note that the three pro.viders’ principal places of business are in Indiana; in Jeffersonville, Indiana; Indianapolis, Indiana; and Michigan City, Indiana; respectively. In this sense, the providers do not share the same business location with Tenet/NME or NME Psychiatric Properties as did the defendant corporations in Wesleyan Pension.
Anthem also asserts the jurisdiction should be exercised via the parent/subsidiary relationship because the subsidiaries share directors and officers. Indeed, Michael Focht, Sr. acted as President of Jefferson Hospital, Inc. while also acting as President of NME Psychiatric Properties. Anthem also notes that the same person, Ronald Bernstein, acted as President of P.I.A. Indianapolis, Inc. and P.I.A. Michigan City, Inc. Despite this, we do not see the level of simultaneous control over Tenet/NME and the resident providers necessary to confer general jurisdiction. In Wesleyan Pension, the same three people acted simultaneously as controlling shareholders, directors, and officers of all nine defendant corporations. After examining the control of the three Indiana providers and the other forty-seven non-resident providers, we do see some overlap, in that some of the acting presidents serve as president of several providers. However, control over the providers is not tightly-held among the same individuals, as was the case in Wesleyan Pension. See Wesleyan Pension, 964 F.Supp. at 1262.
Based on the foregoing, we cannot conclude that the trial court abused its discretion in granting Tenet/NME’s motion to dismiss for lack of personal jurisdiction despite Anthem’s parent/subsidiary argument. While there are contacts among Tenet/NME, NME Psychiatric Properties, and the three Indiana providers, these contacts do not indicate that Tenet/NME exercised a degree of control greater than that “normally associated with common ownership and directorship.” Id. at 1261. Therefore, we affirm the trial court’s decision to grant Tenet/NME’s motion to dismiss for lack of personal jurisdiction.

III. Discovery on Parent/Subsidiary Issue

Anthem also contends that the trial court erred by not allowing it to fully conduct discovery on the parent/subsidiary issue. Anthem presented the defendants with extensive interrogatories and requests for discovery. The defendants responded to many of these interrogatories and requests, but also objected and refused to respond to others, prompting Anthem to file a motion to compel. The trial court denied the motion to the extent that discovery was related to the merits of the ease and the parent/subsidiary theory, but ordered the defendants to comply with all requests directly related to jurisdiction. We agree with Anthem that discovery on the parent/subsidiary issue was relevant since it is a means for establishing general jurisdiction. However, we do not believe that Anthem was prejudiced by the trial court’s order. Generally, the broad discretion afforded the trial court in ruling on discovery matters, coupled with the harmless error doctrine, will bar reversal except in an unusual case. Coster v. Coster, 452 N.E.2d *1168 397, 400 (Ind.Ct.App.1983); Crull v. Platt, 471 N.E.2d 1211, 1216 (Ind.Ct.App.1984), tmns. denied,. There will be no reversal of a discovery order unless there is a showing of prejudice by the moving party. Coster, 452 N.E.2d at 400-01.
Here, Anthem was provided with significant discovery on the defendants’ corporate structure. The record reflects that the defendants provided Anthem with a list of the officers and directors of TeneVNME and NME Psychiatric Properties (Record at 408); a list of all Tenet/NME shareholders residing in Indiana (including addresses and number of shares owned) (Record at 458); balance sheets for NME Psychiatric Properties (Record at 1522); and bank account numbers of the three Indiana providers (Record at 459). Moreover, in response to Anthem’s interrogatories, the defendants stated that Tenet/NME did not maintain any bank accounts in Indiana, nor did any Tenet/NME employees directly supervise any officers, directors, or employees of its subsidiaries. Lastly, Anthem was provided with numerous travel authorization forms, fax transmittals, memoran-da, and checks from Tenet/NME to its Indiana providers and other Indiana entities. Based on the foregoing, we conclude that Anthem was not prejudiced by the trial court’s decision to restrict discovery.

IV. Specific Jurisdiction Over NME Hospitals

[8]

Lastly, Anthem asserts that the requirement for specific jurisdiction is met with respect to NME Hospitals because NME Hospitals sent correspondence and made telephone calls to Anthem in order to secure Anthem’s payments. Indeed, the record reveals that employees of the health care providers operated by NME Hospitals; Doctors Hospital and Brookhaven Psychiatric Pavilion, sent letters and made phone calls to Anthem in connection with securing insurance payments. The parties stipulated that:
On numerous occasions from January 1, 1989 through December 31, 1991, employees working at health care facilities owned by the Non-Resident Providers sentcorre-spondence and made telephone calls to Associated Insurance Companies, Inc., in the State of Indiana regarding the processing and payment of health insurance claims submitted to Plaintiffs for health care services performed wholly outside of Indiana.
Record at 1497-99.
NME Hospitals does not dispute that the two providers contacted Anthem in connection with processing insurance claims. Instead, it argues that personal jurisdiction may not be founded solely on interstate letters and calls. This claim is not entirely accurate. It is true that our courts have denied personal jurisdiction where the only contacts with the forum state were letters and phone calls. See Pannette, 583 N.E.2d 753; Rosowsky, 653 N.E.2d 146. However, it is also true that our courts have found jurisdiction where the only contacts were letters and phone calls.
For example, in Cogdell, this court held that the appellant’s contacts were sufficient to confer jurisdiction on Indiana courts where the contacts consisted solely of letters and phone calls. Cogdell, 643 N.E.2d at 398. In so holding, we stated: “[t]he law is clear that an ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit.” Id. Thus, we decided to confer jurisdiction where the contacts, although minimal, gave rise to an allegedly fraudulent real estate transaction. Id.[9]
Despite NME Hospital’s claim that involvement by Indiana residents was merely fortuitous, at the time that the providers sought payment directly from Anthem, they were aware that Anthem was an Indiana corporation. NME Hospitals maintained an ongoing business relationship with Anthem *1169 by submitting claims for payment, and sending correspondence and making telephone calls to secure those payments. These contacts are directly related to the subject of this lawsuit because Anthem now claims that this correspondence consisted of fraudulent claims and misrepresentations. This is the essence of specific jurisdiction. NME Hospitals purposefully availed itself of the benefits and responsibilities of doing business in Indiana when it chose to directly contact Anthem regarding insurance payments. For these reasons, we conclude that the trial court erred in granting NME Hospital’s motion to dismiss for lack of jurisdiction.[10]
Conclusion
We affirm the trial court’s decision to grant the defendants’ motion to dismiss for lack of personal jurisdiction as it pertains to Tenet/NME, but reverse its decision with respect to NME Hospitals.
BAKER, J. concurs.
ROBB, J. concurs in part and dissents in part and files separate opinion.

. In its motion, the defendants did not include the three “resident” provider defendants; Jefferson Hospital, Inc., Arbor Hospital, and King-wood Hospital.

. The court also granted the motion to dismiss as it pertained to another Tenet/NME subsidiary, NME Psychiatric Properties, Inc., which the parties do not dispute.

.Anthem does not oppose the dismissal of NME Psychiatric Properties, Inc. The thirty-seven "non-resident” health care providers, however, have appealed the trial court's decision to deny the motion to dismiss as it relates to them. This appeal is currently pending as cause number 10A01-9810-CV-368.

. Anthem does not assert that there was specific jurisdiction over Tenet/NME; therefore, we address only general jurisdiction.

. The court further concluded that the sales conducted in Indiana allegedly giving rise to general jurisdiction were not "significant.” Charlesworth, 878 F.Supp. at 1201. In the instant case, Tenet/NME attempts to advance the argument that general jurisdiction should be denied since its contacts with Indiana "are minimal in light of the company's over all nationwide operations”; yet, the record fails to indicate what percentage of Tenet/NME’s business is conducted here. We find this inquiry unnecessary, however, to our ultimate resolution of the issue.

. Anthem also claims that Tenet/NME maintained a bank account in Indiana. However, the record reflects that the bank accounts held in Indiana are accounts for P.I.A. Indianapolis, Inc., P.I.A. Michigan City, Inc., and Jefferson Hospitals, Inc.

. Anthem also asserts that Tenet/NME paid filing fees to the Indiana Secretary of State. However, an examination of the record reveals that the filing fees were paid in conjunction with filing annual reports on behalf of NME Management Services,' Inc. and NME Psychiatric Hospitals, Inc., two subsidiaries of Tenet/NME.

. Anthem does not assert that there is general jurisdiction over NME Hospitals; therefore, we address only specific jurisdiction.

. We also note that, in a footnote in Rosowsky, the court stated:
In Cogdell, the correspondence and telephone calls were made in furtherance of an alleged fraud in a real estate transaction involving Indiana residents. A defendant should expect to answer in the state of residence of those he defrauded when correspondence and telephone calls were purposefully made to that state in furtherance of the fraud.
Rosowsky, 653 N.E.2d at 149 n. 1.

. We decline to engage in the subsidiary/parent corporation discussion regarding NME Hospital's control over its two Texas health care providers since the appellees do not raise this issue in their brief. Rather, their argument is restricted to the sufficiency of NME Hospital's providers' contacts with Indiana in establishing specific jurisdiction.