**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**GLENN D. BOWMAN**
**CYNTHIA M. LOCKE**
**CHRISTINE M. RIESNER**
Stewart & Irwin, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
**JAMES DIMOS**
**BRIAN M. FALCON**
Frost Brown Todd, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MITCHELL & STARK CONSTRUCTION COMPANY, INC., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) No.  36A04-1103-CT-79 |
| | ) |
| STRAND ASSOCIATES, INC., as successor In interest to SIECO, INC., | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE JACKSON SUPERIOR COURT
The Honorable Bruce Markel, III, Judge
Cause No.  36D01-0608-CT-12

**February 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**


<u>STATEMENT OF THE CASE</u>

Mitchell & Stark Construction Company, Inc., ("the Contractor") appeals the trial court's grant of summary judgment in favor of Strand Associates, Inc., ("the Engineers") in Mitchell & Stark's third party indemnification action against Strand.

We affirm.

<u>ISSUE</u>

Whether the trial court erred in granting summary judgment in favor of Strand.

<u>FACTS</u>

The city of Seymour, Indiana ("the City") owns and maintains the Von Fange Ditch ("the Ditch"), a legal drain and sewer line that flows through the west side of the City. Many years ago, the Ditch was declared to be in a flood plain, which restricted its use and required surrounding property owners to maintain flood insurance. In the mid-1990's, the Indiana Department of Natural Resources studied the Ditch and determined that concerns about the flood plain might have been overestimated.

In 1994, the City contracted with the Engineers[1] to review the Department's study and advise the City about long and short term solutions for improvements to the Ditch. In 1997, the City hired the Engineers to design those improvements and help the City implement them. In the initial design phase, the City and the Engineers anticipated they

---

[1] The contract was originally executed between the City and SIECO, Inc. The Engineers acquired SIECO in 2002.

2

would need to excavate the Ditch and reconstruct it. However, when the Engineers'

modeling for the flow of water was completed, it was determined that the construction

and improvements to the Ditch did not need to be as extensive as they previously

believed. Further, the time frame for getting permits to do the excavation and

reconstruction exceeded the time allotted for the project. The City therefore revised the

scope of the project to merely include pulling back vegetation in the bottom of the Ditch

to make sure the water flowed and replacing pipes.

After the City and the Engineers determined the scope of the work and

specifications for the Ditch project, they included this information in a "Proposal,

Specifications, and Contract Documents" provided as part of the public bidding process.

During this process, the Contractor submitted the lowest bid, and the City accepted it.

(Supp. App. 356).

Before the Contractor began working on the Ditch project, the City and the

Engineers entered into an agreement, which provided that the Engineers were to observe

the Contractor's work and report its observations to the City. However, the contract

expressly prohibited the Engineers from supervising the Contractor and released the

Engineers from any responsibility for the Contractor's acts or omissions while working

on the Ditch project. Specifically, the agreement provided in relevant part as follows:

> Engineer . . . shall not . . . supervise, direct or have control over
> Contractors' work nor shall Engineer have authority over or responsibility
> for the means, methods, techniques, sequences or procedures or
> construction selected by Contractors, for safety precautions and programs
> incident to the work of Contractors or for any failure of Contractors to

3

comply with laws, rules, regulations, ordinances, codes, or orders applicable to Contractors furnishing or performing their work. Accordingly, Engineer can neither guarantee the performance of the construction contracts by Contractor nor assume responsibility for Contractors failure to furnish and perform their work in accordance with the Contract Documents.

(App. 68). There was no contractual relationship between the Engineers and the Contractor.

The City and the Contractor also entered into an agreement, which provided in relevant part that the Contractor was to promptly and carefully remove all excess soil from the Ditch. Industry practice contemplates that a contractor will determine how he is going to both remove and dispose of the soil. The contractor typically factors the costs for these options into its bid. If there is a possibility that the soil is contaminated, it must be disposed of in a regulated landfill, which is an expensive undertaking for a contractor. If the soil is not contaminated, adjacent property owners might request the soil for their own use, which is a less expensive option for a contractor.

Here, the Contractor included the cost of soil removal in its bid and explained that, consistent with the industry practice, it intended to determine how it would remove and dispose of the Ditch's soil. The original plan for disposing of the soil was to find a low ground that needed fill and dump it. However, Thomas Greemann, an owner of five acres of property adjacent to the Ditch, told the Contractor that he wanted dirt from the Ditch added to his property to get as much of his property as possible out of the floodway. The Contractor and Greemann subsequently entered into a private agreement

4

pursuant to which the Contractor would put only "clean," or uncontaminated, soil on Greemann's property. (Supp. App. 223). Although the City, the Engineers, and the Contractor never tested the soil because they had no reason to believe it might be contaminated, the Contractor specifically represented to Greemann that it would put only clean or uncontaminated soil upon his property.

Several years after the Ditch project was completed, Greemann entered into an agreement for the sale of his property adjacent to the Ditch. In conjunction with the sale, an Environmental Site Assessment was performed and revealed that the soil from the Ditch that the contractor had deposited on Greemann's property was contaminated with lead, arsenic, petroleum, and other contaminants. The sale of the property was cancelled, and Greemann was required to remediate the contamination.

In June 2007, Greemann filed a complaint against the City, the Jackson-Jennings Farm Bureau Cooperative Association, Inc., which operated a bulk fertilizer facility and stored treated wood on the property immediately to the east of Greemann's' property, and the Contractor alleging negligence, nuisance, trespass, and strict liability based upon the failure of the City and the Contractor to "comply with applicable federal, state, and local laws and regulations." (App. 24-32). Greemann also sought to recover the remediation costs pursuant to the Indiana Environmental Act.

Almost two years later, in June 2009, the Contractor filed a third-party complaint against the Engineers wherein it alleged that the Engineers had a common law duty to indemnify it for all damages of judgments the Contractor might be ordered to pay

5

Greemann. The Engineers filed a motion for summary judgment, which the trial court granted. The Contractor appeals.

DECISION

The Contractor argues that the trial court erred in granting the Engineers' summary judgment motion. Specifically, the Contractor argues that the Engineers have a common law duty to indemnify it for all damages or judgments it might be ordered to pay Greemann.

The purpose of summary judgment is to resolve quickly and inexpensively those disputes in which no genuine issue of material fact exists and in which one party is entitled to judgment as a matter of law. *Bailey v. Shelter Mut. Ins. Co.*, 615 N.E.2d 508, 509 (Ind. Ct. App. 1993). A trial court's grant of summary judgment is "clothed with a presumption of validity" and the appellant has the burden of demonstrating the trial court erred. *Lytle v. Ford Motor Co.,* 696 N.E.2d 465, 468 (Ind. Ct. App. 1998). However, we must carefully scrutinize the trial court's decision to ensure that the non-prevailing party was not improperly denied his day in court. *Id.*

On review of a trial court's decision to grant summary judgment, this Court applies the same standard as the trial court. *Wank v. Saint Francis College*, 740 N.E.2d 908, 910 (Ind. Ct. App. 2000). Pursuant to Indiana Trial Rule 56(C), summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law.

The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Markley Enters., Inc. v. Grover,* 716 N.E.2d 559, 564 (Ind. Ct. App. 1999). All evidence is construed in favor of the opposing party and all doubts as to the existence of a material issue must be resolved against the moving party. *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 675 (Ind. Ct. App. 2007).

Indemnity has been defined as "[t]he right of an injured party to claim reimbursement for its loss, damage or liability from a person who has such a duty." BLACKS LAW DICTIONARY 784 (8th ed. 2004). A right of indemnification may arise from an express contractual obligation or a statutory obligation or may be implied at common law. *Sears, Roebuck & Co. v. Boyd,* 562 N.E.2d 458, 461 n. 2 (Ind. Ct. App. 1990).

Indiana adheres to the general rule that in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification only if he is without fault. *Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind. Ct. App. 1995). The right to indemnity may be implied at common law only in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed. *Id.*

Some jurisdictions have recognized exceptions to this general rule in cases where there is a disparity in the conduct of the parties. *Id.* However, Indiana has refused to adopt any of these exceptions, instead reaffirming the rule that there may be no indemnity

where the party claiming indemnity is guilty of actual negligence whether malfeasance, misfeasance, or nonfeasance. *Id.* This is so because Indiana does not recognize degrees of fault. *Id.*

Here, to recover in its indemnity action, the Contractor must show that it is without fault and that the Engineers caused the harm to Greemann. The Contractor can make neither showing. First, our review of the facts reveals that it is undisputed and consistent with industry practice that the Contractor assumes sole responsibility for disposing of any soil removed from the Ditch and includes the cost of such removal in its bid. Furthermore, the Contractor herein entered into a private agreement with Greemann to remove dirt from the Ditch and place it on Greemann's property. The Contractor told Greemann that it would not put any contaminated soil on his property, but the Contractor failed to have the soil tested. The Contractor also failed to ask the Engineers if the soil had been tested or if it was free from contaminants before entering into the contract with Greemann. The Contractor subsequently placed contaminated soil on Greemann's property. These undisputed facts prevent the Contractor from establishing that it is without fault. Because the Contractor bore some fault, it was not entitled to indemnity. *See id.*

Further, the Engineers did not cause the harm to Greemann. Rather, the evidence reveals that the Contractor placed the soil on Greemann's property without inquiring about its content or testing it for contamination. Further, the Engineers were expressly prohibited from assuming any type of supervisory role or responsibility for the

8

Contractor's work on the Ditch.  Lastly, we agree with the Engineers that the City's decision regarding the change in the scope of the Ditch project is irrelevant to whether the Contractor should have tested the soil before placing it on Greemann's property. Because the Engineers did not cause the harm to Greemann, the Contractor is not entitled to indemnity.  The trial court did not err in granting the Engineers' summary judgment motion.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.